UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

MARK ANTHONY CUBIE,

    Petitioner,

v.                                       Case No. 12-C-1099

UNITED STATES OF AMERICA,

    Respondent.

ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE,
OR CORRECT SENTENCE (DOC. 1), DISMISSING CASE,
AND DENYING CERTIFICATE OF APPEALABILITY

After the Seventh Circuit Court of Appeals issued its mandate affirming Mark Anthony Cubie's 2008 judgment of conviction, Cubie has continued to challenge his conviction on multiple fronts. Most of the motions he filed in the underlying criminal case have been resolved. In the pending civil case, this court allowed Cubie to proceed on two ineffective assistance of counsel claims. The initial brief in support of the motion provided insufficient facts to demonstrate that counsel failed his Sixth Amendment duties. However, Cubie has since filed a 13-page reply to the government's responsive brief and a 79-page declaration and exhibits, shedding a little more insight into the factual bases for his claims.

Before turning to the merits, the court will deny Cubie's request to strike material from pages 1, 2, 5, and 6 of the government's brief. The identified portions of the government's brief are neither redundant nor immaterial. (Doc. 21 at 7.) Additionally, for the reasons set forth below, Cubie's § 2255 motion will be denied.

BACKGROUND

On June 7, 2005, a grand jury sitting in the Eastern District of Wisconsin returned a seven-count indictment against Mark A. Cubie, Orlandes Nicksion, Ronald Q. Terry, Anthony L. Burke, Delano Hill, Edward Cubie, and Sylvester Pigram on June 7, 2005. (Case No. 05-CR-146, Doc. 37.) Count one charged each defendant with, beginning sometime in 2004 and continuing through May 16, 2005, knowingly and intentionally conspiring to distribute controlled substances (cocaine and crack cocaine) in violation of 21 U.S.C. § 841(a)(1) and 846. Counts two and three charged Cubie with distribution of a controlled substance and possession of a controlled substance with intent to distribute the same, on January 28, 2005, and February 2, 2005, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Count four charged Cubie with knowingly carrying a firearm during and in relation to the drug trafficking crime charged in count three of the indictment, in violation of 18 U.S.C. § 924(c)(1)(A)(I). Count five charged Cubie with possession of a firearm by a convicted felon on February 2, 2005, in violation of 18 U.S.C. § 922(g)(1). Count six charged Cubie and Terry with possession of a controlled substance with intent to distribute the same on May 12, 2005, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Count seven charged Nicksion with possession of a firearm by a convicted felon. A superseding indictment, returned on July 19, 2005, added Jose Lopez to the drug conspiracy charge. (Case No. 05-CR-146, Doc. 81.)

Cubie challenged the indictment with a motion to suppress Title III wire intercepts, a motion to suppress all evidence that was recovered during a February 2, 2005, stop and search of defendant's vehicle, a motion to suppress the evidence recovered during the execution of a search warrant at the defendant's residence, a motion for a *Santiago*

hearing, a motion to strike surplusage, a motion to require notice of intent to use other crimes, wrongs or acts evidence, and a motion to disclose the identity of the confidential informants. (Case No. 05-CR-146, Docs. 126, 129, 130-134.) Attorney Thomas Hayes, counsel for Cubie, filed two motions to adjourn the evidentiary hearing scheduled by the magistrate to address previously undisclosed police reports, including a traffic citation. (Case No. 05-CR-146, Docs. 184, 187-188.) The magistrate judge granted the continuance and set the evidentiary hearing for December 27, 2005. (Case No. 05-CR-146, Docs. 190, 192, 199.) After hearing testimony, the magistrate judge issued a 70-page recommendation that all of the motions be denied, except for the motion to disclose confidential informants (granted in part) and the motion for a Santiago hearing (deferred for a ruling by this court). (Case No. 05-CR-146, Doc. 209.) Notwithstanding the objections filed by Attorney Hayes, the court adopted the recommendation. (Case No. 05-CR-146, Docs. 235, 241.)

On August 22, 2006, the grand jury returned a second superseding indictment for the purpose of adding Donald Buchanan as a defendant. (Case No. 05-CR-146, Doc. 259.) Attorney Hayes filed proposed jury instructions and voir dire, and the court set a new motions deadline. (Case No. 05-CR-146, Docs. 256, 257.)

Next, Cubie filed a pro se motion for "authorization to obtain order for services of a chemical analyst expert and for compensation of such expert." (Case No. 05-CR-146, Doc. 281.) In his motion, Cubie asserted that the substance seized on January 28, 2005, did not involve cocaine base. (Case No. 05-CR-146, Doc. 281.) Notably, Cubie did not assert that the January 28, 2005, controlled buy did not happen. The magistrate judge denied the pro se motion because it was not filed by counsel. (Case No. 05-CR-146, Doc. 297.)

3

With respect to the motion to suppress the Title III intercepts, the magistrate judge conducted evidentiary hearings on December 6, 2006, and December 20, 2006. (Case No. 05-CR-146, Docs. 315, 326, 330-331.) The second hearing was scheduled to allow the defendants the opportunity to cross-examine Milwaukee Detective Daniel Thompson after he had filed an affidavit. (Case No. 05-CR-146, Doc. 341.) Thompson was the only witness at the two hearings, and the magistrate judge acknowledged that Thompson gave conflicting testimony regarding important points of the government's case. (Case No. 05-CR-146, Doc. 341 at 14.) Specifically, Thompson stated incorrectly that he had used a pen register on Ronald Terry's phones to help determine that x5638 was Cubie's new number, and he testified incorrectly that the woman with the x1716 phone called x5638 a couple of hours after the confidential informant called x1716. (*Id.*) Nevertheless, the magistrate judge concluded that these inconsistences brought into question Thompson's ability to remember how he identified x5638 as the new number but did not suggest illegality in obtaining the call records. (*Id.* at 15.) Further, the timing of the x1716 call to x5638 did not taint the analysis because it was supplemental information which aided Thompson in identifying x5638 as Cubie's new number. (*Id.*) The magistrate judge recommended that the motion be denied, and Attorney Hayes filed an objection.

On May 14, 2007, Attorney Hayes filed a motion to withdraw from representation because Cubie had not fulfilled his obligations under the retainer agreement. (Case No. 05-CR-146, Doc. 409.) This court conducted a motion hearing, and appointed Attorney Hayes to represent Cubie under the Criminal Justice Act after both Cubie and Attorney Hayes reported that they had a good attorney/client relationship. (Case No. 05-CR-146,

4

Doc. 414.) Soon thereafter, the court adopted the report and recommendation that Cubie's motion to suppress be denied. (Case No. 05-Cr-146, Doc. 416.)

On September 18, 2007, the grand jury returned a third superseding indictment expanding the time frame of the conspiracy set forth in count one. (Case No. 05-CR-146, Doc. 419.) Cubie filed a request for new counsel on October 2, 2007, claiming that Attorney Hayes had been remiss in his duties in the following respects:

- First and foremost I would like to address his lack of communication and lackluster which thus far has hindered the growth and development of my defense by him not doing the following things; I'm having issues about my Search Warrant Motion, how it wasn't address, that 8 officers ran in my apartment before Det. Ken Smith arrived with the Search Warrant, this was an Illegal Enter and a
- Warrant less Entry. This was a chief evil misconduct by the agents that the 4th Amendment has directed them not to do.

- Second, Det. Thompson being at more than two/three places at the same time; my apartment and waiting on a Search Warrant and securing my apartment and booking my co-defendant, Anthony Burke; in which he, Det. Thompson. Is supposed to be at my apartment. This is our Discovery at A & S 0002, A & S 00029, and at Search Warrant 0001.

- Third, how agents are following me around without me being in my car that has a GPS on it and also I'm not having the 1716# or phone.

(Case No. 05-CR-146, Doc. 430.) After discussing the motion with Cubie, Attorney Hayes filed a motion to withdraw expressing concern that Cubie's attitude towards him "may effect Mr. Cubie's ability to meaningfully process pertinent information . . . . for the purpose of making the multitude of important decisions that a criminal defendant, awaiting trial, must make." (Case No. 05-CR-146, Doc. 432-2.)

At the October 15, 2007, hearing on Attorney Hayes's motion to withdraw, Cubie represented that his mother had retained a new attorney for him but he did not know her

5

name. Attorney Hayes represented that he was ready for trial. (Case No. 05-CR-146, Doc. 447.) Then, during the October 16, 2007, pretrial conference, Cubie stated that Attorney Andrea E. Gambino had been retained to represent him but she did not appear and the court could not reach her at her office. Therefore, the court instructed Attorney Hayes to remain as counsel and found that Cubie and Attorney Hayes appeared to have an intact attorney-client relationship. (Case No. 05-CR-146, Doc. 452.) Less than two weeks later, the government filed a signed plea agreement with respect to Cubie. (Case No. 05-CR-146, Doc. 469.) Cubie confirmed during his October 29, 2007, plea hearing, that he wished to proceed with Attorney Hayes as counsel and that he was satisfied with Hayes's performance. (Case No. 05-CR-146, Docs. 469, 475.)

In the plea agreement, Cubie agreed to plead guilty to count one (conspiracy to sell 5 kilograms or more of cocaine and 50 grams or more of cocaine base beginning sometime in 2004 and continuing through May 16, 2005) and count five (knowingly carrying a firearm in relation to a drug trafficking crime on or about February 2, 2005). Cubie retained the right to appeal "any claim that he raised in a pretrial motion." (Case No. 05-CR-146, Doc. 469.) He did not seek to withdraw his plea and has never attacked counsel's performance with respect to the plea agreement.

On June 14, 2006, Attorney Gambino filed a motion to substitute as Cubie's attorney, and the court granted the motion. (Case No. 05-CR-146, Docs. 538, 539.) Attorney Gambino also filed a motion to adjourn the sentencing hearing so she would have adequate time to prepare. (Case No. 05-CR-146, Doc. 548.) The court convened on August 22, 2008, for Nicksion, and Terry's sentencing hearings; however, Cubie's sentencing was adjourned to October 30, 2008. (Case No. 05-CR-146, Doc. 556.)

6

Attorney Gambino filed objections and supplemental objections to Cubie's presentence investigation report, vigorously challenging the drug quantity and any reference to the Benion homicide. (Case No. 05-CR-146, Docs. 553.) The court rejected Attorney Gambino's calculation of drug quantity, in part because it omitted the drugs from the February 2, 2005, stop, and ruled that it would not consider the Benion homicide. (Case No. 05-CR-146, Docs. 572, 570.) Cubie was sentenced to 295 months, which has since been reduced to 248 months based on a change in the sentencing guidelines. (Case No. 05-CR-146, Docs. 579, 776.)

After entry of judgment, Cubie filed a direct appeal arguing that his pretrial motion to suppress evidence seized from his car during the February 2, 2005, traffic stop was denied improperly. (Case No. 05-CR-146, Doc. 642.) He also argued that the court should have granted his request for a pretrial proffer or hearing regarding the admissibility of co-conspirator statements and that the court erred in calculating the drug quantity at sentencing. The Seventh Circuit rejected his arguments, noting that the district court had properly made a credibility determination with respect to the officers involved in the stop and that law enforcement collectively knew that Cubie had made a controlled drug purchase on January 28, 2005, that the informant had made a controlled payment of $5,000 on the day of the stop, and that Cubie appeared to be involved in other drug transactions shortly before the stop. *United States v. Cubie*, 628 F.3d 368, 377 (7th Cir. 2010). Additionally, the Seventh Circuit rejected Cubie's arguments regarding a pretrial proffer because the statements of his co-conspirators would have been admissible against Cubie had he not pled guilty. Finally, the sentencing arguments were rejected because Cubie's estimates were too low inasmuch as he neglected to include the 35 grams of crack

7

seized from the February 2, 2005, traffic stop, and the district court did not consider the Benion homicide. *Cubie*, 628 F.3d at 378. The United States Supreme Court denied Cubie's petition for writ of certiorari on October 31, 2011. *Cubie v. United States,* 132 S. Ct. 536 (2011).

CONCLUSIONS OF LAW

Under 28 U.S.C. § 2255, a prisoner can seek to vacate his sentence on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Under the Sixth Amendment, a criminal defendant is entitled to "effective assistance of counsel-that is, representation that does not 'fall below an objective standard of reasonableness' in light of 'prevailing professional norms.'" *Bobby v. Van Hook*, 558 U.S. 4, 16, 130 S. Ct. 13, 175 L. Ed. 2d 255 (2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). To prevail on such a claim, the petitioner must show: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced him. *Strickland*, 466 U.S. at 684–85.

At this stage, the Court's review of counsel's performance is highly deferential: "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed.2d 624 (2011) (quoting *Strickland*, 466 U.S. at 690). In considering that question, the court must avoid employing the benefit of hindsight, and must respect its "limited role in

8

determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, 562 U.S. 115, 131 S. Ct. 733, 178 L. Ed.2d 649, (2011). As to the prejudice prong, the petitioner must establish a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 111.

Cubie is proceeding on two ineffective assistance of counsel claims, although the first has multiple subparts. First he argues that counsel failed to hire a private investigator, seek severance from the third indictment, obtain dispatch records of February 2, 2005, related to his car, challenge the legality of the GPS device placed on his car (warrant authorized different car), attend his presentence interview, hire a telecommunications expert, check telephone service provider records to determine the date, time, and signature of the individual who faxed data pertaining to him, and explore how the agents followed him for three and a half days when he was not in the car with the GPS attached. Next, Cubie asserts that counsel failed to object to the December 20, 2006, *Franks* hearing and failed to hire a forensics expert to conduct a critical fingerprinting analysis of documents from the PENS 260-292 to check for authentication of all wiretap applications and extensions as well as their dates, times, and signatures.

Noticeably absent from any of Cubie's submissions is an attack on the validity of the plea agreement. He challenges various aspects of counsel's performance, all of which predate the signing of his plea agreement. Moreover, the court notes that Cubie reserved the right to appeal any claim he raised in a pretrial motion while acknowledging that he was surrendering certain rights. (Case No. 05-CR-146, Doc. 469.) Significantly, above Cubie's

9

signature on the plea agreement he stated that he discussed all aspects of this case with his attorney and was satisfied that his attorney provided effective assistance of counsel. (*Id.*)

During the plea hearing, Cubie unequivocally stated it was his intention to plead guilty and the court found him legally competent to proceed. Cubie confirmed under oath that he signed the plea agreement, read the acknowledgment above his signature, and that all of his statements respecting these matters were true. Then, he entered a guilty plea with respect to counts one and five. He did not plead guilty to the January 28, 2005, controlled buy or the Benion homicide.

It is equally problematic that Cubie was represented by three different attorneys through the time of sentencing, yet seems to challenge the representation of Attorney Thomas Hayes who withdrew after the plea but prior to sentencing. In his declaration, Cubie states that he became dissatisfied with Attorney Hayes when he failed to appear for the "PSR/PSI meetings signaling that he would not participate." However, the record suggests that Cubie expressed dissatisfaction with Attorney Hayes prior to the plea agreement and that his concerns were resolved by the time of the plea. Additionally, Cubie's mother retained Attorney Gambino who filed objections to the presentence report, appeared and argued on behalf of Cubie during the contested sentencing hearing, and continued to represent Cubie on appeal.

In his reply brief, Cubie points to error and breach of fiduciary duty but clarifies he is not referring to "Attorney Gambino but rather the prior attorney Hayes." (Case No. 12-C-1099, Doc. 21 at 1.) Hence, Cubie could have raised the above issues prior to his plea and/or sentencing, and certainly before judgment was entered. Indeed, Cubie filed a pro

se motion for authorization to hire a chemical analyst almost one year prior to his guilty plea, but never raised the arguments identified in the pending motion—even though he states he brought them to counsel's attention.

It is within this context that the court turns to the merits of Cubie's § 2255 motion. Although the government has not had the opportunity to respond to the many arguments raised in the reply brief, no further briefing is necessary because the record belies Cubie's assertions. For example, Cubie suggests that Attorney Hayes, who represented him through the entry of the plea, promised—but failed—to hire an investigator. The crux of the claim appears for the first time in his reply and is predicated on his belief that an investigator:

> [C]ould have and would have aided in the following discoveries and proofs procurement(s): (a) there was no controlled buy on 1/28/05 (which explains why when I requested to hear the recordings on the controlled buy and to see proof consistent with a controlled buy it was never produced; (b) the investigator would have honed in on the fact that the quantity and drugs format claimed obtained in a controlled buy on 1/28/05 doubled nearly and was in a totally differeent format; (c) the investigator would have uncovered evidence bolstering the fact that I was not involved in any conduct or conspiracy before 2004 at the earliest.

Cubie also believes that an investigator could have interviewed Milwaukee Police Officers, a CI, Officers Terrell, Mitchell, Ward, Devalkenaere, Brousseau and Detectives Smith and Wellens to uncover inconsistences "to suggest manufacturing of evidence and embellishment of evidence." Moreover, he submits that an investigator could have uncovered and obtained a statement from the phone service provider that his phone was no longer in service or capable of facilitating anything between the dates of March 29, 2005, and April 2, 2005.

11

As to these arguments, Cubie cannot establish deficient performance or prejudice. Significantly, Cubie did not plead guilty to the charge arising from the January 28, 2005, controlled buy. Instead, he entered a plea with respect to the February 2, 2005, traffic stop. Likewise, Cubie did not plead guilty to a conspiracy commencing prior to "sometime in 2004." Meanwhile, Cubie had the opportunity to challenge the January 28, 2005, controlled buy in his pro se motion to hire an expert but only disputed that the controlled buy involved cocaine base—he did not assert that the buy never happened.

The magistrate judge, district court and Seventh Circuit rejected Cubie's challenges to the February 2, 2005, traffic stop on a finding that the police had probable cause to take him into custody because he provided a half of kilogram of cocaine to the confidential informant on January 28, 2005. (Case No. 05-CR-146, Doc. 209, p. 39.) These rulings followed an evidentiary hearing in which the magistrate judge found Cubie's passenger less than credible and counsel for the various defendants had the opportunity to cross-examine the officers.

Finally, to the extent that Cubie suggests he suffered prejudice from the weight of the drugs attributed to the January 28, 2005, controlled buy, Attorney Gambino filed two sets of objections to the presentence report and attacked probation's calculation of the drug quantity calculation. Yet he does not challenge Attorney Gambino's performance at sentencing. Attorney Gambino argued that Cubie's base offense level was a 34 and in, "no case, more than 36" because the report overestimated the drug quantity attributable to Cubie. She proposed that a fair estimate would result in a range of 15-50 kilos based on Lopez's account of when he began supplying Cubie with cocaine, the controlled contacts and surveillance from January 26 to February 1, 2005, and "possible delivery of

12

an additional one kilogram to Delano Hill on January 28." The government responded that the estimate was extremely conservative because it only considered the time frame of 2004 to the arrest and that Cubie failed to take into consideration the 35 grams of crack cocaine seized from him on February 2, 2005. The court agreed with the government, and, on appeal, the Seventh Circuit Court of Appeals rejected Cubie's challenge inasmuch as Cubie's calculations ignored the 35 grams of cocaine recovered during the February 2, 2005, traffic stop and therefore his base offense level was 36. *Cubie*, 628 F.3d at 378. Hence, Cubie cannot establish that, but for counsel's alleged errors, the result of the proceedings would have been different.

Next, Cubie argues that counsel should have sought a severance of the charges against him in the third indictment. Cubie cannot be severed from an indictment. Rule 8(b) of the Federal Rules of Criminal Procedure proves that an indictment may charge two or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. Fed. R. Crim. P. 8(b). Defendants may be charged in one or more counts together or separately, and they do not need to be charged in each count. Rule 12 allows a defendant to seek a severance of charges or defendants, and Rule 14 allows the court to order separate trials of counts or defendants if the joinder of offenses or defenses in an indictment appears to prejudice a defendant. Fed. R. Crim. P. 12, 14. Therefore, Cubie could have sought a severance from the other defendants but he chose to enter a guilty plea to a conspiracy beginning sometime in 2004 and 2005. The plea did not expand the scope of the conspiracy to 2002. For that reason, the court ruled that it would not consider the Benion homicide in connection with Cubie's sentencing. As such, Cubie cannot establish that he

suffered any prejudice from counsel's failure to seek severance respecting the third indictment.

Cubie's argument that counsel failed to obtain February 2, 2005, dispatch records or otherwise challenge the legality of the GPS installation and his car records provides no insight into how the results of the proceeding would have been different. Police dispatch records would not have changed the outcome of the court's disposition of Cubie's motion to suppress. As discussed above, the magistrate judge conducted an evidentiary hearing regarding the traffic stop, heard the testimony of the officers involved and Cubie's passenger, ruled against Cubie on the motion, and made a credibility determination. Even if there was no independent legal support for the stop, the officers had reason to pull Cubie over based on their collective knowledge.

With respect to counsel's failure to challenge the legality of the GPS placement on Cubie's car, this court already ruled in *Nicksion v. United States,* Case No. 12-240, that counsel's failure to bring such a motion was not deficient performance because, at all relevant times there was no binding case law in this circuit recognizing that the attachment and use of the GPS constituted a search under the Fourth Amendment. At the time of Cubie's appeal, *United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007), permitted the attachment and use of the GPS tracker without a warrant on a showing of probable cause. Although the Supreme Court held in 2012 that the intrusion on the property interest of a car's owner is a "search," valid only if reasonable, *United States v. Jones*, —— U.S. ——, 132 S. Ct. 945, 181 L. Ed.2d 911 (2012), the Seventh Circuit issued its mandate affirming the decision of the district court on April 18, 2011. *See generally United States v. Brown*, 744 F.3d 474, 476 (7th Cir. 2014)("It would be inappropriate to use the exclusionary rule

to suppress evidence derived from a GPS locator before the Supreme Court's decision in *Jones.*") Further, on January 14, 2015, the Seventh Circuit Court of Appeals held that officers acting prior to the *Jones* decision reasonably relied on existing precedent to conclude that installation of a GPS device in a public space and the location data it produces is not within the scope of the Fourth Amendment. *U.S. v. Taylor*, 2015 WL 162655 (7th Cir. Jan. 14, 2015). Consequently, Cubie cannot establish that his attorney's failure to raise this issue fell below the objective standard of reasonableness.

The argument that counsel was deficient for failing to attend the presentence interview similarly fails because Cubie has provided nothing suggesting that legal matters were discussed during the interview. Cubie's evidence, page 79 of the exhibits attached to his reply, is a letter from Attorney Hayes to United States Probation Agent Jerald Husz on January 16, 2008, confirming that Agent Husz would only cover biographical information during the presentence interview and would not address the facts comprising the base offense level. (Case No. 12-C-1099, Doc. 22 at 79.) Attorney Hayes cautioned that if his understanding was incorrect, Agent Husz should contact him immediately so that he could be present during the presentence interview. After Attorney Gambino was retained and Attorney Hayes withdrew, Attorney Gambino properly filed two sets of objections to the presentence report and vigorously challenged it at sentencing. Moreover, she prevailed on her argument that the Benion homicide should not be considered in sentencing Cubie. Therefore, Cubie cannot establish either prong of the *Strickland* test.

Cubie's remaining arguments under the first ground—that counsel should have hired a telecommunications expert, checked with the service provider regarding the date, time, and signature of the individual who faxed data regarding him, or explored how the agents

15

followed him for three and half days—fails because Cubie provides no explanation as to how counsel's failure to take either action resulted in any prejudice.

The second ground for relief focuses on counsel's failure to object to the December 20, 2006, *Franks* hearing and failure to hire a forensics expert to check for fingerprints on PENS. Curiously, Cubie argues that a final adverse decision was made and not objected to by Attorney Hayes, allowing the government to proceed with its conspiracy theory and wiretaps. This, according to Cubie, caused him to forfeit his crucial right to face his accuser and his right to due process by "record accuracy, completeness, and relevance."

Attorney Hayes filed a motion for and secured two *Franks* hearings on behalf of Cubie and had the opportunity to cross-examine Thompson. Thus, Cubie was not deprived of his right to face an accuser pretrial. At the end of the first *Franks* hearing, the government was ordered to disclose the pen and trap orders and the 2703(d) orders that were used to get information from Terry's phone prior to April 12, 2005. The government also filed a motion to reopen the hearing and asked the court to accept the affidavit of Thompson and the attached exhibits. (Case No. 05-CR-146, Doc. 312.) Defendants requested a continuation of the hearing from December 6, 2006, to cross-examine Thompson and the second hearing was conducted on December 20, 2006. (Case No. 05-CR-146, Doc. 326, 331.) Cubie and his co-defendant, Terry, filed a joint memorandum in support of their second motion to suppress highlighting the inconsistencies in Thompson's testimony. (Case No. 05-CR-146, Doc. 336.)

Under these circumstances, the court does not find counsel's participation in the hearings nor counsel's briefing of the issues to be deficient. Cubie would have preferred that Attorney Hayes object to the second hearing, but he made a reasonable decision to

16

cross-examine Thompson regarding the inconsistencies in his testimony and Thompson's attempt to explain his testimony with a subsequent affidavit. Attorney Hayes elicited favorable testimony for Cubie, including testimony that at the time of the application for the Title III information Thompson did not know that x5638 was Cubie's phone and that Thompson did not have the recordings from the phone calls between the confidential informant and the x1716 and x5638. (Case No. 05-CR-146, Doc. 330 at 22-25.) The magistrate judge addressed the problems with Thompson's testimony and the possible inferences, but concluded that the government presented sufficient evidence to establish that it legally obtained all of its call data information for x5638 through the analysis of the pen register data for x1716, a call to x1716 by the informant, and the analysis of the pen register data for Nicksion's phone. This court adopted the recommendation, and rejected a similar argument in Nicksion's § 2255. (Case No. 12-C-240 at 14-15.) Aside from finding that counsel's performance was reasonable, Cubie has not shown prejudice with respect to the alleged errors.

As a final matter, the court must consider whether to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, and Rule 22(b)(1) of the Federal Rules of Appellate Procedure. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 1153(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004). To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)(certificate of appealability should

issue if the petitioner demonstrates "that reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong."). Having failed to meet his burden, Cubie needs no encouragement to proceed further. Consequently,

    IT IS ORDERED that Mark Anthony Cubie's motion to vacate, set aside, or correct sentence is denied.

    IT IS FURTHER ORDERED that this case is dismissed.

    IT IS FURTHER ORDERED that a certificate of appealability is denied.

    Dated at Milwaukee, Wisconsin, this 21st day of September, 2015.

                                     BY THE COURT

                                     /s/ C.N. Clevert, Jr.
                                     C.N. CLEVERT, JR.
                                     U.S. DISTRICT JUDGE